**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

YENAURY REVI,

                                        **Plaintiff,**                          **20-CV-02351 (SN)**

                     -against-                                               **OPINION & ORDER**

**COMMISSIONER OF SOCIAL SECURITY, et al.,**

                                        **Defendants.**

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 9/23/2022 __

**SARAH NETBURN, United States Magistrate Judge:**

      Yenaury Revi ("Plaintiff"), appearing *pro se*, seeks judicial review of the determination

of the Commissioner of Social Security (the "Commissioner") that she was not entitled to

disability insurance benefits ("DIB") or supplemental security income ("SSI") under the Social

Security Act (the "Act"). The Commissioner moved for judgment on the pleadings and to

dismiss the action against administrative law judge ("ALJ") Alexander G. Levine. The

Commissioner's motion is GRANTED in part and DENIED in part, and the case is remanded to

the Social Security Administration for further proceedings. All claims against ALJ Levine are

DISMISSED.

## BACKGROUND

### I.    Administrative Proceedings

      Plaintiff's claim for benefits has been pending for nearly a decade. She first applied for

DIB and SSI in 2013, alleging disability beginning on May 17, 2013, as a result of a thyroid

condition, recovery from stage zero breast cancer, lower back pain, and "diffuse disks." ECF No.

11, Administrative Record ("R.") 176, 180, 200–01. ALJ Louis M. Catanese issued a decision

denying the claim on June 3, 2015. Id. at 46–57.

Plaintiff sought review of the ALJ's decision in federal court. The Court remanded for

further administrative proceedings, concluding the ALJ erred in failing to develop the record

with respect to Plaintiff's side effects from Synthroid and tamoxifen, essential medications

Plaintiff was prescribed to manage her chronic hypothyroidism and to prevent breast cancer.

Revi v. Comm'r of Soc. Sec., No. 16-cv-08521 (ER)(DF), 2018 WL 1136997, at *27 (Jan. 30,

2018), report & rec. adopted 2018 WL 1135400 (S.D.N.Y. Feb. 28, 2018). Specifically, the

Court noted that the ALJ failed to inquire into Plaintiff's side effects even though publicly

available information regarding these medications suggests that common side effects include

nausea and fatigue, symptoms that Plaintiff regularly reported. Id. at *29. Furthermore, one of

Plaintiff's providers wrote "that she could not rule out that Plaintiff's symptoms of pain in her

chest, back, and left arm were an 'adverse reaction' to tamoxifen." Id. Although the ALJ's

failure to develop the record did not "undermine the ALJ's evaluation of the limiting effects of

Plaintiff's claimed spinal impairments," it did "call into question the adequacy of his evaluation

of the limiting effects of Plaintiff's treatment regimens for her status post mastectomy and

hypothyroidism." Id. On remand, the Court directed the ALJ to further develop the record

regarding any side effects from the medications by seeking additional opinion evidence from

Plaintiff's endocrinologist, Dr. Charmian Cohen, and primary treating oncologist, Dr. Eleni

Andreopoulou, and "to revise his weighing of the opinion evidence, credibility assessment, and

RFC determination(s) for the relevant periods" accordingly. Id. at *29, *32. Additionally, if the

ALJ found it "appropriate to consider Plaintiff's expressed desire to return to school (as

potentially suggestive of an ability to work)" then he should "explore further the nature and

physical demands of any education program in which Plaintiff believed she would be able to participate." Id.

Plaintiff subsequently appeared before ALJ Alexander G. Levine for a two-part hearing on November 8, 2018 and August 23, 2019. R. 1008, 1033. ALJ Levine issued a decision finding that claimant was not disabled on December 31, 2019. Id. at 997. Plaintiff did not file an appeal with the Appeals Council.

## II.     Plaintiff's Federal Case

Plaintiff filed her complaint on March 16, 2020, seeking review of the ALJ's opinion. See ECF No. 2, Complaint ("Compl."). She requests that the Court modify or reverse the Commissioner's decision and grant her DIB or SSI. Id. at 2. Plaintiff also named ALJ Levine as a defendant. Id. at 1. The Commissioner answered by filing the administrative record, and the Commissioner moved for judgment on the pleadings. ECF Nos. 11 & 16. The Commissioner argues that substantial evidence supports the ALJ's decision that Plaintiff was not disabled for the period at issue. ECF No. 17, Defendant's Memorandum of Law ("Def. Mem.") 21–30. In addition, the Commissioner argues that the action against ALJ Levine should be dismissed for lack of subject matter jurisdiction and failure to state a claim. Id. at 1–2, 30–31. In response, Plaintiff contends that the vocational expert improperly concluded that she could work as a cashier or, alternately, as an inspector of plastic products, assembler, and marker, and that the ALJ failed to consider the medical opinion of Dr. Danielle Duret. ECF No. 23, Plaintiff's Memorandum in Opposition ("Pl. Mem.") at 1–2.

III.    **Factual Background**

    **A.  Non-Medical Evidence**

Plaintiff was born on January 22, 1974, and was 39 at the time of the alleged onset of his disability. R. 94. She graduated from high school and completed two years of college. Id. at 202, 1019. She previously worked for Gourmet Dining LLC and Sodexo, first as a server and later as a cashier, in a college cafeteria. Id. at 75, 194–95, 202, 1020–21. Her responsibilities as a cashier included preparing coffee and food for sale, counting money, swiping credit cards, and interacting with customers. Id. at 1020. When preparing food for sale, she would carry boxes of up to 50 pounds. Id. at 75–76.

At Plaintiff's first hearing in 2015, she testified that her lower back pain, which she described as sharp or stabbing, represented her most severe medical impairment. R. 76, 81. Plaintiff had a mastectomy in 2009 and began taking tamoxifen thereafter. Id. at 76. The back pain began roughly six months later. Id.  Plaintiff also reported that after her mastectomy, she had difficulty lifting with her left arm. Id. at 77. As a result of a long-standing thyroid condition, half of her thyroid was removed in 2009. Id. Additionally, Plaintiff testified that she had arthritis, bulged discs causing numbness and cramps in her arms and legs, and uterine cysts that limit her ability to stand. Id. at 78–79. Although she could walk up to three blocks, she could sometimes walk only one block before resting. Id. at 82–84. She estimated that she could sit for 40 minutes before needing to stand and walk and stand for a maximum of 30 minutes before resting. Id. at 83. She could carry up to 10 pounds. Id. at 84.

Plaintiff was taking Synthroid for her thyroid condition, tamoxifen for her breast cancer, gapapentin for numbness, tingling, and muscle pain, and tramadol for pain. Id. at 81. She identified fatigue, shortness of breath, constipation, nausea, lightheadedness, sleeplessness, and a

loss of appetite as her primary side effects. Id. She also reported that the tramadol made her feel hyperactive. Id. at 84.

In addition, Plaintiff testified that she experienced symptoms of depression two to three times a week. Id. at 83.

At the time of the hearing, Plaintiff was single and lived alone in an apartment in the Bronx. Id. at 68. She had a driver's license but did not own a car, and instead used public transportation. Id. at 70. While she could shower and dress herself, she reported that she had difficulty cooking or preparing materials when she felt fatigued, could not bend to retrieve her laundry from the washing machine, and had to take breaks while cleaning her apartment. Id. at 71, 82–83. She testified that her chronic pain interfered with her sleep, and that she could generally only sleep for 3–4 hours a night. Id. 72. She spent her days reading or watching TV, sometimes leaving her apartment to visit family or to shop for groceries when not in pain. Id. Her doctor had encouraged her to take a college course to get her out of the house. Id. at 79–80.

Plaintiff's testimony at her second hearing in 2019 paralleled her prior testimony. She testified that she could not work because of pain in her lower back, neck, shoulders and hands. R. 1021. At the hearing she was wearing braces on her wrists for numbness in her wrists and hands. Id. at 1024–25. She had difficulty sleeping and slept about three hours a night. Id. at 1022. Her depression and pain medications made her constipated and drowsy, and she told the ALJ that she kept "forgetting everything." Id. at 1022–23. She did not report hallucinations or an urge to harm herself or others, but did suffer from anxiety attacks, which she described as feeling "uncomfortable." Id. at 1023. She could walk a maximum of three blocks, sit or stand for a maximum of 30 minutes, and could lift five to ten pounds occasionally. Id. at 1023–24. When the ALJ asked if she could reach above her head, she responded in the affirmative but indicated that

she could not comfortably wash her hair. Id. at 1025. She could reach forward and to the side. Id. She could climb approximately five steps before resting and could not bend forward to touch her knees. Id. at 1025–26. Plaintiff testified that she could dress herself and shower. Id. at 1026. Her friends helped her with cooking and other household chores. Id. at 1028–29. She traveled to her medical appointments in either a taxi or a bus. Id. at 1026. In her free time, she watched TV, and occasionally went to see movies or eat in restaurants. Id. at 1027. She had recently traveled to the Dominican Republic to visit her parents, who were ill with cancer. Id. at 1027–28. She traveled with two friends who helped carry her luggage. Id. at 1028.

A vocational expert did not testify at the hearing, but the ALJ requested answers to interrogatories from vocational expert Andrew Pasternak. Id. at 1367–77. The ALJ asked the expert to assume an individual who had the RFC to perform light work with the following exertional limitations: frequently reach and handle; occasionally operate foot controls, push/pull, finger, feel, climb ramps/stairs, balance, stoop and kneel; never climb ladders, ropes or scaffolds, crouch or crawl; and avoid all exposure to extreme cold and heat, wetness and humidity, environmental irritants, and unprotected heights, as well as the use of heavy machinery. Id. at 1375. The expert responded that such an individual could perform Plaintiff's prior work as a cashier, and additionally could perform work as an inspector of plastic products, an assembler, and a marker, all at a specific vocational preparation (SVP) of two. Id. at 1376.

**B.  The ALJ's Decision**

On December 31, 2019, the ALJ denied Plaintiff's application for DIB and SSI. R. 987–997. The ALJ acknowledged that the case was on remand from the United States District Court for the Southern District of New York and explained that he sent a vocational interrogatory to vocational expert Pasternack and medical interrogatories to consultative experts Dr. Jennifer

Blitz and Dr. Janis Eiler. Id. at 987. The ALJ, however, did not indicate that he complied with the specific instructions from the District Court to obtain opinion evidence from two of Plaintiff's treating doctors, Dr. Cohen and Dr. Andreopoulou.

As a threshold matter, the ALJ concluded that Plaintiff met the insured status requirements of sections 216(i) and 223 of the Social Security Act and had acquired sufficient quarters of coverage to remain insured through December 31, 2018. Id. at 987–88.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 17, 2013, the alleged onset date. Id. at 989.

At step two, the ALJ determined that Plaintiff's thyroid condition, breast cancer, low back pain, cervical radiculopathy, fibromyalgia, anemia, lumbago, insomnia, and bilateral shoulder pain qualified as severe impairments. Id. at 990. In contrast, he found that Plaintiff's "medically determinable mental impairment of adjustment disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." Id. In reaching this determination, he gave great weight to Dr. Blitz's opinion, which was based on a review of Plaintiff's records. Id. Dr. Blitz concluded that there were insufficient documented symptoms to support a diagnosis of major depressive disorder and Plaintiff's symptoms were more consistent with adjustment disorder with anxious and depressed mood. Id.  She further opined that Plaintiff's treating records and consultative examination indicated "no more than a minimal impairment in the ability to perform work functions." Id. The ALJ found that her medial opinion was "well supported by medically acceptable diagnostic techniques, and based on a comprehensive evaluation of the record as a whole." Id. In contrast, the ALJ gave little weight to the opinion of Dr. Leonardo Vando, Plaintiff's treating psychiatrist, who assessed marked to extreme mental limitations, because it was "not well supported by

medically acceptable diagnostic techniques and [was] primarily based on the claimant's physical pain and limitations." Id. Applying the paragraph B criteria, the ALJ concluded that Plaintiff had no limitations in the domains of understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing herself. Id. at 990–91. He found only mild limitations in the domain of interacting with others. Id. at 991.

At the step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the applicable regulations. Id. The ALJ considered and rejected listings 13.10 in relation to Plaintiff's breast cancer, 1.04 regarding Plaintiff's cervical radiculopathy, fibromyalgia, and lumbago, and 1.02 for Plaintiff's shoulder condition. Id. at 992.

The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R §§ 404.1567(b) and 416.967(b), limiting her to "occasionally" operating foot controls, pushing and pulling, fingering, feeling, climbing ramps and stairs, balancing, stooping, and kneeling; never climbing ladders, ropes or scaffolds, crouching or crawling; "frequently" reaching and handling; and avoiding all exposure to extreme cold, heat, wetness, humidity, environmental irritants, and unprotected heights and all use of hazardous machinery. Id. at 992. The ALJ explicitly considered treating records and medical opinion evidence from P.A. Nigel M. Philip-Rousseau, a pain management specialist who had treated Plaintiff since 2014, Dr. Jesus Knampa, who treated Plaintiff for cancer beginning in 2009, Dr. Janis Eiler, who provided answers to medical interrogatories based on a review of Plaintiff's records in 2019, Dr. Mauricio Silva, a consultative examiner who evaluated plaintiff in September 2013, and Dr. Daniel Schwartz, a consultative examiner who evaluated Plaintiff in 2018. Id. at 993–95. He did not explicitly

consider the evidence regarding Plaintiff's non-severe mental impairments in formulating the RFC, or any side effects of Synthroid and tamoxifen. Id. at 992–95.

At step four, the ALJ determined that Plaintiff could perform her past relevant work as a cashier and could additionally perform the requirements of positions such as an inspector of plastic products, assembler, and marker. Id. at 995–96. Accordingly, the ALJ concluded that Plaintiff had not been under a disability during the applicable period and was not entitled to either DIB or SSI under the statute. Id. at 996–97.

## DISCUSSION

### I.     Standard of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Although deferential to an ALJ's findings, a disability determination must be reversed or remanded if it contains legal error or is not supported by substantial evidence. See Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

### II.    Scope of Review on Limited Remand

"The scope of review on remand is narrowed to issues not explicitly or implicitly decided in prior proceedings, by application of the 'law of the case' doctrine." Martinez v. Comm'r of Soc. Sec., No. 18-cv-01570 (KHP), 2019 WL 3852439, at *7 (S.D.N.Y. Aug. 16, 2019). "The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Ali v. Mukasey, 529 F.3d 478, 490 (2d Cir. 2008)

(quoting <u>United States v. Tenzer</u>, 213 F.3d 34, 39 (2d Cir. 2000)). Remand instructions to an ALJ from a District Court in social security appeals constitute the law of the case, and "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." <u>Sullivan v. Hudson</u>, 490 U.S. 877, 886 (1989); <u>see also</u> <u>Thompson v. Astrue</u>, 583 F. Supp. 2d 472, 475 (S.D.N.Y. 2008); <u>Bradley v. Colvin</u>, 110 F. Supp. 3d 429, 441 (E.D.N.Y. 2015); <u>Calderon v. Astrue</u>, 683 F. Supp. 2d 273, 276–77 (E.D.N.Y. 2010); <u>Martinez</u>, 2019 WL 3852439, at *9.

### III.    Analysis

The Commissioner argues that judgment should be granted because substantial evidence supports the ALJ's decision. The Plaintiff, for her part, argues that the vocational expert improperly concluded that she could work as a cashier or, alternately, as an inspector of plastic products, assembler, and marker, and that the ALJ failed to consider the medical opinion of Dr. Danielle Duret. Both arguments miss the mark. The ALJ made two legal errors that require remand. First, the ALJ failed to comply with the Court's remand order. Second, the ALJ failed to adequately develop the record regarding the side effects of tamoxifen and Synthroid.

### A.  Failure to Comply with the Court's Remand Order

"On the remand of a case after appeal, it is the duty of the lower court or the agency from which the appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation." <u>Carrillo v. Heckler</u>, 599 F. Supp. 1164, 1168 (S.D.N.Y. 1984) (quoting <u>Mefford v. Gardner</u>, 383 F.2d 748, 758 (6th Cir. 1967)). In its remand order, the Court directed the ALJ "to develop the Record with respect to Plaintiff's medication history for tamoxifen and Synthroid, and the presence and limiting consequences of any side effects thereof, and to revise his weighing of the opinion evidence, credibility assessment, and RFC

determination(s) for the relevant periods." <u>Revi</u>, 2018 WL 1136997, at *32. The Court further directed that opinion evidence should be sought from Dr. Andreopoulou, Plaintiff's oncologist, and Dr. Cohen, Plaintiff's endocrinologist. <u>Id.</u> at *31. While noting that Dr. Cohen completed a medical questionnaire where she indicated that the Plaintiff took Synthroid on a long-term basis, the Court explained that she "was not squarely asked . . . whether Plaintiff was suffering side effects from Synthroid, and the nature of any limitations – including potential non-exertional limitations such as nausea and fatigue – that may have been attributable to the medication, a question material to the ALJ's disability determination." <u>Id.</u>

On remand, the ALJ failed to comply with this order. He did attempt to develop the record by seeking additional records from Plaintiff's providers, including Dr. Cohen, and the record includes updated treatment notes from Dr. Cohen, R. 1413–39, Dr. Sireen Gopal and P.A. Philip-Rousseau, <u>id.</u> at 1381–1404, who treated Plaintiff for back pain, Dr. David Gonzalez, <u>id.</u> at 1619–24, an orthopedist who examined Plaintiff for back pain, psychiatrist Dr. Vando, <u>id.</u> at 1440–1504, and Plaintiff's primary care physician and Nurse Practitioner Janice Gordon-Simpson, <u>id.</u> at 1506–60, who saw Plaintiff for follow-up after a mammogram in 2018. The record also contains completed medical questionnaires from Dr. Vando, <u>id.</u> at 1583–91, and P.A. Philip-Rousseau, <u>id.</u> at 1592–98, reports from consultative examiners Dr. Daniel Schwartz, <u>id.</u> at 1560–73, and Dr. Laura Kerenyi, <u>id.</u> at 1574–82, and medical interrogatories that the ALJ solicited from Dr. Blitz, <u>id.</u> at 1658–65, and Dr. Eiler, <u>id.</u> at 1667–76. But there is no evidence that the ALJ ever sought opinion evidence from either Dr. Cohen or Dr. Andreopoulou. Indeed, his medical records requests to Dr. Cohen stated only that the Commissioner sought "updated medical records."[1] <u>Id.</u> at 1410. The side effects of tamoxifen and Synthroid are discussed only in

---

[1] Although the ALJ's requests to Dr. Cohen are described in the index as "Unsuccessful Development Attempt[s]," R. 1599, 1611, the administrative record contains Dr. Cohen's treatment notes for

passing in Dr. Cohen's and N.P. Gordon-Simpson's treatment notes, and no medical opinion evidence addresses them.

As a result, the ALJ also failed to consider any possible side effects of tamoxifen or Synthroid in formulating Plaintiff's RFC. This failure is particularly problematic because the record suggests that Plaintiff may still be suffering from the side effects of tamoxifen despite completing treatment in June 2015. Id. at 1528. N.P. Gordon-Simpson wrote in her treatment notes that the potential long-term effects of tamoxifen include endometrial cancer, stroke, and cataracts, id., and in September 2018 Plaintiff was diagnosed with endometrial polyps, id. at 1406. Plaintiff previously testified that uterine cysts limited her ability to stand. Medical opinion evidence could have clarified whether there was a connection between Plaintiff's tamoxifen treatment and her later diagnosis, as well as provided a basis for additional exertional limitations.

The ALJ failed to comply with the Court's remand order. This failure constitutes legal error, and remand is the appropriate remedy. Carrillo, 599 F. Supp. at 1168–69; see also Martinez, 2019 WL 3852439, at *9 (remanding where the ALJ failed to comply with the Court's order to obtain specific testimony from the vocational expert).

## B.  Failure to Develop the Record

A claimant bears the burden to prove that she is disabled through step four of the inquiry. See 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to [the Commissioner] that you are blind or disabled."); Schauer v. Schweiker, 675 F.2d 55, 59 (2d Cir. 1982). But because of the non-adversarial nature of the Social Security proceedings, an ALJ has an affirmative obligation to develop the medical record before making a determination. See Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016). Under the regulations, the

---

appointments between 2016 and 2018, indicating that Dr. Cohen did respond to the requests, id. at 1413–39.

Commissioner must make "every reasonable effort" to help the claimant obtain medical evidence even if the claimant is represented by counsel. 20 C.F.R. §§ 404.1512(b)(1), 416.912(b). "Every reasonable effort" means that the ALJ must make an initial request from the claimant's medical source and one follow-up request if the evidence is not received. 20 C.F.R. §§ 404.1512(b)(1)(i), 416.912(b)(1)(i). Where the ALJ fails to properly develop the record, remand is appropriate. See Moran v. Astrue, 569 F.3d 108, 114–15 (2d Cir. 2009).

Although the ALJ attempted to comply with the remand order by seeking additional treatment notes and opinion evidence from Plaintiff's medical providers and consultative examiners, he failed to take any steps to develop the record regarding the side effects of tamoxifen and Synthroid, disregarding the specific orders of the Court. Failure to develop the record by taking necessary steps to obtain or clarify medical source opinions is legal error and grounds for remand. Prieto v. Comm'r of Soc. Sec., No. 20-cv-3941 (RWL), 2021 WL 3475625, at *12 (S.D.N.Y. Aug. 6, 2021) (remanding for further development of the record where "[t]he ALJ should have attempted to obtain medical source opinions from [treating physicians] as to the limiting effects of [plaintiff's] spinal impairment"); Cabibi v. Colvin, 50 F. Supp. 3d 213, 229–31 (E.D.N.Y. 2014) (remanding where ALJ failed to comply with Appeals Council's directive to seek additional treating records and clarification regarding provider's assessment of plaintiff's impairments).

Accordingly, the Court remands for the purpose of obtaining medical opinion evidence regarding the side effects of tamoxifen and Synthroid. Upon remand, the ALJ is directed, again, to read the Report and Recommendation of the Hon. Debra Freeman, dated January 30, 2018, and comply with its directions.

### C.  Conclusion

Plaintiff first applied for SSI and DIB nine years ago. In remanding, the Court "reluctantly prolong[s]" a case that is now almost a decade old. Moran, 569 F.3d at 115. "But [Plaintiff] remains, even at this late date, entitled to a proper adjudication of [her] claims." Id. On remand, the ALJ should carefully comply with the Court's prior instructions to (i) seek additional opinion evidence from Dr. Andreopoulou regarding the side effects of tamoxifen during the relevant period, (ii) request additional opinion evidence from Dr. Cohen "regarding the degree of Plaintiff's potential limitations attributable to side effects of her thyroid medication, Synthroid," and (iii) "revise his weighing of the opinion evidence, credibility assessment, and RFC determination(s) for the relevant periods, in light of the development of this evidence." Revi, 2018 WL 1136997, at *31–32.

### IV.  Commissioner's Motion to Dismiss ALJ Levine Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6)

The Commissioner also moves to dismiss ALJ Levine pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff named ALJ Levine as a defendant in her Complaint but has not pleaded any claims against him and exclusively seeks review of the Commissioner's decision under 42 U.S.C. § 405(g). See Compl. 1–2. The Commissioner, however, "is the only proper defendant in a case seeking judicial review pursuant to Section 405(g)." Langella v. Bush, No. 03-cv-5114 (RWS), 2004 WL 2668400, at *4 (S.D.N.Y 2004); see also Keesing v. Apfel, 124 F. Supp. 2d 134, 135 (N.D.N.Y. 2000) (dismissing claims against two individual SSA officials where plaintiff sought judicial review under 42 U.S.C. § 405(g)). Therefore, the Court dismisses all claims against ALJ Levine with prejudice.

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings is GRANTED in part and DENIED in part. The action against ALJ Levine is DISMISSED. The case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:          New York, New York
                September 23, 2022